UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TIMOTHY FLYNN, | ) |
| *Plaintiff*, | ) Case No. 1:25-cv-192 |
| v. | ) Judge Atchley |
| TN DEPARTMENT OF CORRECTIONS, FRANK STRADA, BRETT COBBLE, JERRY JOHNSON, and COTY HOLLAND, | ) Magistrate Judge Steger |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Bledsoe County Correctional Complex ("BCCX"), filed a pro se civil rights action under 42 U.S.C. § 1983 [Doc. 1] and a motion for leave to proceed *in forma pauperis* [Doc. 4]. For the reasons set forth below, the Court will grant Plaintiff's motion, permit Plaintiff to proceed on a retaliation claim against Defendant Coty Holland in his individual capacity, and dismiss all remaining claims and Defendants.

I. **MOTION TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). It appears from Plaintiff's motion to proceed *in forma pauperis* [Doc. 4] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia

Avenue, Suite 309, Chattanooga, Tennessee 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum Opinion and Order to the Court's financial deputy. This Memorandum Opinion and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.    SCREENING OF COMPLAINT

### A.    Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### B. Plaintiff's Allegations[1]

At approximately 7:30 a.m. on June 24, 2024, the inmates housed in BCCX 25A pod held a "sit down" in "chow hall 1" at BCCX Site 1 to protest the approximate three-week abuse of authority displayed by Correction Officer ("CO") Elser [Doc. 1 at 1]. The inmates had written grievances and filed information requests to Warden Cobble "to no avail, so [they] asked politely to speak to the warden while [they] were in the chow hall" [*Id.*]. The inmates explained to CO Hadley Gray that they did not want to return to their unit because other inmates stated they would kill CO Elser when they returned to the unit [*Id.*]. But the "green team" entered the chow hall "screaming at [the inmates] to leave the chow hall now" [*Id.*]. The green team fired pepper balls

---

[1] Plaintiff attached disciplinary forms to the complaint [Doc. 1 at 4–16]. The Court considers these documents part of the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

at the inmates, and Plaintiff was "shot with the riot gun" [*Id.* at 1, 2]. Then the inmates formed a line and began to walk back to the unit with their hands behind their backs [*Id.* at 1].

Walking back to the unit, Plaintiff's cellmate, James Kelly, turned and asked Plaintiff why the guards shot him [*Id.* at 1–2]. Plaintiff responded, "I don't know, but I am going to call my attorney" [*Id.* at 2]. Lt. Coty Holland "jerked" Plaintiff out of the line, told Plaintiff, "[Y]ou want to call a[n] attorney b*tch, I will give you a reason to[,]" "roughly cuffed" Plaintiff, and "handed [Plaintiff] off to I.A. Dustin Bouldin" [*Id.*]. As I.A. Bouldin was transporting Plaintiff to "the hole," Plaintiff asked the reason for the punishment [*Id.*]. I.A. Bouldin told Plaintiff he did not know, but because he heard Plaintiff say something about calling his attorney, Plaintiff would probably be written up for "creating a disturbance" [*Id.*]. I.A. Bouldin also advised Plaintiff he should not have said anything while walking back to his unit [*Id.*]. Even though "everyone else was talking" and Plaintiff was "singled out for saying [he] was calling a lawyer," Plaintiff was willing to accept the Class B write up [*Id.*].

But instead of a Class B write up, Plaintiff and two other inmates received a Class A write up for participating in a riot [*Id.*]. When Plaintiff's inmate advisor, Justin Burks, told Plaintiff what he had been charged with, Plaintiff asked for a hearing [*Id.*]. Mr. Burks signed two hearing forms continuing the hearing, so Plaintiff remained in the hole until his hearing on July 9, 2024 [*Id.* at 2, 4].[2]

"[T]he administration told Sgt. Johnson that they wanted the three charged with participation in a riot to suffer" [*Id.*]. Plaintiff and the two other accused inmates were escorted to "the hole" in Unit 21 "pending [their] disciplinary hearing[s]" [*Id.* at 15]. Therefore, Plaintiff

---

[2] The handwriting on the Disciplinary Report Hearing Summary attached to Plaintiff's complaint, though so faint as to be illegible in sections, appears to indicate that the continuances were granted at the request of the disciplinary board [Doc. 1 at 10].

4

remained in the hole in Unit 21 until his hearing on July 9, 2024 [*Id.* at 2, 4]. At the hearing, Sgt. Johnson read the disciplinary write up, which stated that Lt. Holland witnessed three inmates, one of whom was Plaintiff, "verbally instructing the other inmates in the area to 'Stand up! Now is the time! We ain't backing down now!', [thereby] enticing them [to] act against staff members" [*Id.* at 2, 15 (typeface altered; all capital letters in original)]. Sgt. Johnson asked Plaintiff if he had any questions for Lt. Holland, and Plaintiff asked, "[D]id you hear these words come out of my mouth[?] [*Id.* at 2]. Lt. Holland replied, "[N]o[,] Mr. Flynn[,] I did not[,] but your name came across my desk[,] and I was told to write you up[,] so that's what I d[id]" [*Id.*]. Plaintiff asked Sgt. Johnson if he was "good to go" given Lt. Holland's admission, but Sgt. Johnson found Plaintiff guilty and imposed upon him 30 days of punitive segregation, the removal of 3 months of prisoner sentence reduction credits, and a $5 fine [*Id.*].

For the first 30 days he was held in punitive segregation, Plaintiff was "celled with no 1 hour out" [*Id.*]. After the 30 days, Plaintiff was told that his punishment was not harsh enough, and that he would be placed "on administrative segregation/close custody for up to 6 months" [*Id.*].

Plaintiff had his father reach out to various State officials and the Department of Justice to obtain help with Plaintiff's "falsified write up[,]" because there was never a "riot" at the BCCX [*Id.*]. Instead, Plaintiff was retaliated against for stating he was going to call his attorney [*Id.*]. And, as a result, Plaintiff was "caused sever[e] psychological harm by being placed in solitary confinement[,]" where he was (1) only allowed to call home twice per week; (2) fed cold, half-portioned food; (3) denied his hour out of cell while he was in close custody status; and (4) "not allowed to order any underwear or shirts because they lost all [his] cloth[e]s[,]" requiring him to hand wash "one pair of boxers and 3 white t-shirts the whole 137 days [he] was held in segregation"

5

[*Id.*]. Plaintiff has "been abused by the staff here multiple times and retaliated against for seeking legal help to be able to expose what is taking place in this Tennessee prison system" [*Id.*].

Aggrieved, Plaintiff filed the instant suit against TDOC and Defendants TDOC Commissioner Frank Strada, BCCX Warden Brett Cobble, Sgt. Jerry Johnson, and Lt. Coty Holland seeking monetary damages and injunctive relief [*Id.* at 3]. Plaintiff maintains that Defendant Holland retaliated against him in violation of his First Amendment right to free speech; Defendants Johnson and Cobble conspired with Holland to violate Plaintiff's due process rights under the Fifth and Fourteenth Amendments; and Defendant Strada failed to dismiss "the retaliatory disciplinary report that [Plaintiff] was issued" [*Id.*]. As to his request for injunctive relief, Plaintiff specifically asks for the Court to order "these disciplinary board hearings recorded," and issue "[a]n injunction directing that the retaliatory disciplinary report against [Plaintiff] be dismissed and removed from [his] record" [*Id.*].

C.   Analysis

Plaintiff sues Defendants in both their official and individual capacities [*Id.* at 1].

1.   **Official-Capacity Claims**

The TDOC is an arm of the State of Tennessee, and thus, suit against the TDOC and/or any of the Defendants in their official capacities as employees is suit against the State itself. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). But Plaintiff may not maintain suit against a State or its employees in their official capacities because "a state is not a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

6

Also, the Eleventh Amendment typically "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). As there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against Defendants are also barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee,* 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513–14 (6th Cir. 2021) (holding state officials sued in official capacity immune from suit under doctrine of sovereign immunity absent consent). Therefore, the Court will **DISMISS** the TDOC and all official-capacity claims against Defendants.[3]

### 2. Individual-Capacity Claims

To state a claim against a defendant in his individual capacity, a plaintiff must adequately plead that the particular defendant, through his own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). Constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.");

---

[3] An exception to sovereign immunity, known as the *Ex Parte Young* exception, *see* 209 U.S. 123, 155–56 (1908), allows a plaintiff to "bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). But the exception is applicable only when the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)). Here, Plaintiff's claims do not come within the *Ex Parte Young* exception, because he seeks injunctive relief to remedy past alleged harms.

7

*Monell*, 436 U.S. at 691 (finding that liability under Section 1983 may not be imposed merely because a defendant "employs a tortfeasor").

### a. Supervisory Liability

Plaintiff seeks to impose liability against Warden Cobble and Commissioner Strada for their alleged inaction. Specifically, Plaintiff maintains that Warden Cobble failed to respond to his grievances and requests, and that Commissioner Strada "did not dismiss the retaliatory disciplinary report" [Doc. 1 at 2, 3]. But "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). And there are no facts in the complaint alleging that either of these Defendants "encouraged the specific incident of misconduct or in some way directly participated in it." *See Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (holding a "supervisory official's failure to supervise" is "not actionable [under § 1983] *unless* the supervisor either encouraged the specific incident of misconduct or in some way directly participated in it" (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999))). Under existing law, neither the denial of Plaintiff's appeal nor the alleged failure to respond to Plaintiff's grievances are sufficient to establish supervisory liability. *See, e.g.*, *Shehee*, 199 F.3d at 300 (finding that a failure to respond to or remedy a prisoner's grievance was insufficient to impose liability). Therefore, this claim will be **DISMISSED**.

### b. Retaliation

Plaintiff also contends that Defendant Holland retaliated against him "for asserting [his] First Amendment right to freedom of speech" [Doc. 1 p. 3]. To state a cognizable retaliation claim, Plaintiff must sufficiently allege that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage

8

in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"The Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso,* 569 F.3d 258, 267 (6th Cir.2009) (quoting *Pell v. Procunier,* 417 U.S. 817, 832 (1974)). Prisoners "retain, in a general sense, a right to criticize prison officials" if that right is exercised "in a manner consistent with his status as a prisoner[.]" *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004). And speech is protected when it evinces a prisoner's "intention to resort to official channels to seek a remedy[.]" *Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009) ("Once a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right.").

Here, Plaintiff maintains that after Plaintiff voiced his intention to call an attorney, Defendant Holland stated, "[Y]ou want to call a[n] attorney[,] b*tch, I will give you a reason to" [Doc. 1 at 2]. He claims that, thereafter, he was placed in "the hole," charged and convicted of participation in a riot based on Holland's statement, and received various punitive consequences [*Id.*]. At this stage of the litigation, the Court presumes Plaintiff engaged in protected conduct by stating he intended to call his attorney to seek a remedy for the green team's actions. Plaintiff's allegations also satisfy the second element of the retaliation test, as Plaintiff's punitive segregation, loss of sentencing credits, and a fine, are sufficiently adverse actions. *See, e.g., Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010) ("[A]ctions that result in more restrictions and fewer privileges for prisoners are considered adverse."). Finally, Defendant Holland's alleged statement that he would

9

"give [Plaintiff] a reason" to call his attorney is directly connected to Plaintiff's protected activity and permits the plausible inference that Plaintiff's statement motivated Defendant Holland's decision to charge him with a disciplinary offense. Therefore, the Court cannot find that this claim "is frivolous or malicious" or "fails to state a claim on which relief may be granted[,]" 28 U.S.C. § 1915(e)(2)(B), and this colorable claim of retaliation will **PROCEED** against Defendant Holland in his individual capacity.

### c. Conspiracy

Plaintiff asserts that Defendants Johnson and Cobble conspired with Defendant Holland to violate Plaintiff's due process rights [Doc. 1 p. 3].

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Crowley v. Anderson Cnty., Tenn.*, 783 F. App'x 556, 560 (6th Cir. 2019) (internal quotation marks and citation omitted). To state a § 1983 conspiracy claim, Plaintiff must demonstrate "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).

Because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . . circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) (alteration in original). Nevertheless, a § 1983 conspiracy claim is subject to "relatively strict" pleading requirements that require "some degree of specificity." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Plaintiff has not presented any facts from which this Court could plausibly infer that a plan existed between two or more individuals to injure Plaintiff. Instead, he merely presents a legal conclusion of conspiracy with no factual specificity, and his allegations are insufficient to state a § 1983 claim. *See Gutierrez*, 826 F.2d at 1538 ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."). Therefore, Plaintiff's conspiracy claim will be **DISMISSED**.

### d. Due Process

Although Plaintiff does not expressly raise a free-standing due process claim, he does allege that Defendants conspired "to violate [his] rights to administrative and procedural due process" [Doc. 1 p. 3]. And while the Court has found that Plaintiff cannot sustain a conspiracy claim, the Court will, out of an abundance of caution, nonetheless consider whether Plaintiff's allegations are sufficient to state an independent due process claim.

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake." *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To establish such an interest, Plaintiff must show that being deprived of that right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

It is well settled that "[p]rison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). But the loss of good-time credits as a result of a disciplinary conviction, such as allegedly occurred here, will generally implicate a liberty interest and require certain due process protections. *See id*. at 558. In such circumstances, a prisoner must

11

receive "notice of the charges, an opportunity to present evidence, and a written decision explaining the finding of guilt." *Tate v. Quintana*, No. 18-6179, 2019 WL 5866596, at *1 (6th Cir. May 22, 2019) (citing *Wolff*, 418 U.S. at 563–66).

Plaintiff's allegations in this case fail to state a plausible due process claim. His filings establish that he was provided ample notice of the charges, had the assistance of an inmate advisor, and was provided a hearing where evidence was presented as to the charge against him [*See generally* Doc. 1]. Under the circumstances, due process principles were satisfied. *See, e.g.*, *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 445, (1985) (holding procedural due process requires only "some evidence" to support findings made in disciplinary hearing).

Second, to the extent Plaintiff argues that his disciplinary write up and/or conviction were false or unfair, his allegations fail to state a claim. This is because "erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right." *McDougald v. Eaches*, No. 1:16-cv-900, 2016 WL 7015834, at *3 (S.D. Ohio Sept. 16, 2016) (collecting cases), *report and recommendation adopted*, No. 1:16-cv-900, 2016 WL 7015785 (S.D. Ohio Nov. 30, 2016); *see also Wolff*, 418 U.S. at 564–71 (noting inmates have no constitutional right to be free from disciplinary charges).

Third, while Plaintiff takes issue with the denial of his appeals, he has no due process right to appellate review of a disciplinary conviction. *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *6 (N.D. Ohio July 19, 2019) ("But a prisoner has no due process right to appeal a disciplinary conviction."); *Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*.").

Finally, although it is unclear, the Court presumes that Plaintiff's allegation that "administrative" due process was not followed refers to Defendants' alleged failure to follow TDOC policy and procedures in the course of Plaintiff's disciplinary proceedings. But such an allegation fails to state a claim for § 1983 relief, as institutional policies and procedures do not create constitutionally protected interests. *See McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest); *see also Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) ("It has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.").

Therefore, Plaintiff has failed to state a cognizable due process claim, and these claims will be **DISMISSED**.

### III. ADDITIONAL MATTER

The Court notes that although Plaintiff is confined at the BCCX, his address of record is that of his father, Timothy Flynn, Sr. [*See* Doc. 2-1]. While there is no rule prohibiting Plaintiff from using his father's address as his address of record, the Court **NOTIFIES** Plaintiff that it prefers Plaintiff to use his physical address as the address of record to ensure he promptly receives any legal documents that require a timely response. Therefore, Court expressly **NOTIFIES** Plaintiff that he will be bound by any deadlines set forth in this Court's orders, its Local Rules, and the Federal Rules of Civil Procedure, regardless of whether he chooses to have his legal mail forwarded to a third party.

### IV. CONCLUSION

As set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 4] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff has set forth a plausible retaliation claim against Coty Holland in his individual capacity, and this claim will **PROCEED**;

5. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Holland;

6. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Order;

7. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action will be dismissed;

9. Defendant shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him;

10. All other claims and Defendants are hereby **DISMISSED**; and

11. Plaintiff is **NOTIFIED** of the Court's preference that he use his physical address as the address of record, and that his decision to retain a third-party address will not serve as good cause to excuse any untimely filings; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**